Good morning, Your Honors. Joanna McCallum, Petitioner. Dennis Patuk. This is a case in which the immigration judge found in favor of the petitioner in 2007, almost six years ago. The immigration judge found that he was credible and the BIA did not disagree with that determination. That means no corroborating evidence was needed for his testimony. The government submitted no evidence in the immigration judge proceedings and the government did not rebut his testimony. It's not really clear why we're here, because the Attorney General has never defended the BIA's decision on the merits, ever. They've provided no substantive argument. Instead, they've moved for remand twice. This Court has already denied the remand motion twice. Their brief on the merits to this Court was, again, the same motion to remand, in effect, really requests to reconsider again. The BIA has also had two opportunities to clarify its decision. The request for remand never had any merit. To the extent it did, the main cases the AG relied on in that argument have now been rejected by this Court and other courts. It appears that the AG is seeking to use this petitioner as a vehicle or a means to allow the BIA to more fully develop law that is not even going to change the result in this case. That is unfair to this petitioner. He's been waiting six years since he actually won his case before the immigration judge. On the merits, the BIA applied the wrong standard of review in three different respects to three different elements. The first one was whether the government was unable or unwilling to control the discrimination and the harassment of the petitioner. The BIA admitted that was a factual finding subject to clear error review, but it's apparent from the BIA's opinion it was not actually reviewing it for clear error. The fact that it said it was is not dispositive under this Court's Rodriguez case, which is a 2012 case that we recently submitted. The immigration judge found, based on unrebutted evidence on the record, that the government was unable or unwilling to control it and there was a reason for him to not report the harassment to the police. The BIA conducted its own fact-finding and basically relied on two facts. One is that he did not report it to the police, although the law is clear that he did not need to report it to the police as long as he was able to explain his reasons, which he did. The BIA also relied on the fact that there was actually a failed attempt in the Philippines to introduce or to pass anti-discrimination legislation. The fact is, since 2006, which is the evidence they were looking at at the time, the legislation still hasn't passed. We submitted some materials to the Court recently, the record of the government's involvement or at least inability to control harassment against homosexuals in the Philippines since then is quite well developed and it shows a real record of State-sponsored discrimination and harassment, and this Court can consider such evidence, newer evidence, if it wasn't available at the time. The BIA ignored much of the evidence in the record, which is not entitled to do, in particular the evidence of a police raid on a gay movie theater and an attempt to humiliate the patrons. It's impossible to find clear error on that record. If there's a factual finding that's plausible in light of the entire record, it's not clear error, and that's what we have here. The second way in which the BIA applied the wrong standard of review was on whether the acts that occurred constituted persecution. This Petitioner was the victim of rape and sexual abuse. Recent cases of this Court and others make it clear that at least the BIA must conduct a discrete, two-part inquiry. One is, A, look at the IJ's factual findings for clear error. B, then consider whether that amounts to the legal standard. The BIA here conflated the two, and it clearly did not respect the IJ's factual findings at all. In addition, there was unrebutted testimony in the record that he had had, it was impossible for him to find a job in the Philippines because he was homosexual. There was no evidence in the record that he could get any kind of job. The BIA instead found that he had, quote, limited problems finding a job. That's not the appropriate standard of review either. And the third aspect is whether the persecution was on account of his homosexuality. Again, the case law shows that requires this discrete, two-part analysis. The IJ found on unrebutted testimony that he was beaten because he was a homosexual in addition to the fact that the attackers were looking for money. The BIA found its own fact, which was the rape that he suffered was a crime of opportunity. There was no evidence on the record that that was a crime of opportunity at all. Finally, this Court reviews whether the BIA applied the correct standard of review de novo. However, if the Court determines the BIA did apply the correct standard of review and subjects it to substantial evidence review, still the evidence compels the conclusion that the BIA was wrong. There's no substantial evidence in the record to support any of those three findings. The only evidence in the record was that the government was unable or unwilling to protect him. The only evidence in the record was that he was raped and beaten. The case law says rape, sexual assault, eating, physical abuse is persecution. And the only evidence was that homosexuality was at least one central reason for his abuse. So the Court has some questions. So I'd like to reserve the rest of my time for you both. All right. Thank you. Good morning, Your Honors. May it please the Court, Carol Federighi for the Attorney General Eric Holder in this case. Your Honors, the government requests that this case be remanded to the Board of Immigration Appeals for two reasons. First, remand is warranted for the Board to reconsider the appropriate standard or standards of review to apply to the governmental control determination, and then for the Board to reapply those standards. Second, the case should also be remanded for the Board to clarify and better articulate the basis for its finding that there was no past persecution on account of a protected correctness. You know, we typically don't remand the BIA when the BIA just fouls it up and makes a mistake, and the record coming up from the IAJ is clear enough, and the factual findings, there they are. I don't understand why this is a case for remand instead of let's just take the record as it is and we'll make up our mind. Because there is a question here about whether the Board applied the correct standard of review. And what if we were to conclude that even if the Board were to apply the correct standard of review, he wins? The Court has in past cases, similar cases, and there's been a number of them when it's addressed the standard of review question, held that if the Board has not applied the correct standards, the correct result is to remand it for the Board then to apply the correct standard. Then the Court, because it's the Board's prerogative in the first instance to make a decision on the case under, for example, the Supreme Court case of Ventura. Yeah, but I don't see this as a Ventura case. A Ventura remand case is when the Board or the IAJ simply hasn't decided the question. Here they've decided the question. Since the Board decisions in this case, there's been quite a lot of development of the case law concerning what is the Board's, the appropriate standard of review for the Board to use for various elements in an asylum or withholding determination. Because of this development of the case law, we think it's best to remand for the Board to redo the decision under the, you know, the understanding of the Court's, what the Court's understanding of the correct standard and standards of review are in this instance. And with regards to the particular determination here, the governmental control determination, that is whether the government is unable and unwilling to control persecution, there's no precedent really in this Court yet, and the Board hasn't specifically addressed what the standard of review or standards should be. What the Courts have been developing in this issue, in this area of standards of review, is that with regards to most determinations leading to an asylum determination, a lot of them have to be broken down into factual determinations and legal determinations, and then the appropriate standard of review applies to each particular aspect of that determination. So, for example, with the persecution question, the standard, what happened to the individual is a question of fact that the Board would review for clear error, but whether that issue rose to the level of persecution, that's a question of law, i.e., the application of the statutory standard to the facts. So, in this case, the governmental control determination, I can't really say, because the Board hasn't yet addressed exactly how the standards of review would apply to that in a published decision, but that could also be broken down, as you might be able to see, into factual and legal components. And the Board hasn't yet had a chance to look at this determination in a published decision in light of this subsequent and very recent case law on how the Board's standards of review should be applied. So, for that reason, we think remand is best here to allow the Board to redo the decision using the current case law. As Judge Pregerson said earlier, the government should set an example, and what we want in this case is just to come forward with a better decision in light of the further development and elaboration that's been set out in the case law. But I don't think you're saying that the BIA was applying the correct case law even at the time that it decided the case. We're not going to be remanding to allow the BIA simply to take into account later developments. At least, I don't think that's what you're saying. I think you're saying that the BIA made a mistake even under the case law as it existed at the time. Or am I putting words in your mouth? You're putting words in my mouth. At the time, yes, in retrospect, you could say the Board didn't correctly analyze it under the regulations and the regulations that set out the different standards for questions of fact versus questions of law. But they hadn't yet been elaborated in the case law that sets out now, that has guided the Board more into explaining exactly how those standards apply with regard to these complicated determinations in the asylum context. So at the time, the Board was doing the best it could with the decision, but I think there's more guidance now, and the Board itself has come forward with additional decisions. But I think the law was pretty clear at the time the Board made its decision that it was not allowed to engage in independent fact-finding. That's correct. That's correct. We'd had a statutory change. I mean, there was no ambiguity about the fact the statute had changed. The regulation, yes, you're correct. The regulation did say no fact-finding by the Board. The Board, but in this case, I'm not sure the Board realized, and maybe when we send it back it'll find out that the Board wasn't finding new facts. It was just saying those facts that the IJA found do not rise to the level, do not establish unableness, inability or unwillingness under the statutory standard. But if that's what the BIA found, that the facts found were not interfering with, they don't rise to the level of, that's a classic case where we just review and decide whether we agree with the BIA. That's true. Again, I think if you look at the cases, for example, Rodriguez and Ridor and also Ornelas-Chavez all cited in the briefs, in all those cases where the courts found the Board didn't apply the right standard of review, the Court remanded to the Board, and I think that's the appropriate result here. Also in the Third Circuit case of Wong and the Eleventh Circuit case of Zhu, those were also remanded. I do think that if the Court feels it needs to address the merits here, there is substantial evidence in the record to support the determination that the government is not unwilling and unable to control. It's true that the situation in the Philippines is difficult for homosexuals, and there is discrimination and harassment and, in some cases, violent attacks. But there's no – homosexuality is not a crime in the Philippines. That's on page 295. There's no evidence that the government has a sustained hostility towards homosexuals. There's no evidence of repeated police brutality or police attacks or hostility towards homosexuals. There are occasional raids and harassment by the police. There's some evidence that he himself has been shaken down by the police as a result of it, as a consequence of his homosexuality. That's true. On one occasion, he did say he was shaken down, as you phrased it, by the police. That sort of activity, that kind of harassment and discrimination, while certainly difficult and unfortunate, is not sufficient to rise to the level of persecution under the law. Well, and he also – we also have testimony from the Petitioner that he doesn't complain about things that happen to him. He doesn't complain to the police because he knows that the police will do nothing about it. He believes that they will not do anything about it. He may have some basis for the belief, among other things, the police have shaken him down because he's a homosexual. It doesn't sound as though the police are all that sympathetic to homosexuals. That may be true. I think there is some evidence in the record of that, Your Honor, but there is also evidence that there's no evidence that the police actively attack or seek out homosexuals other than this occasional harassment. But the standard isn't whether the police actively attack homosexuals. The standard is whether they are unable or unwilling to control others who might do this. Right. But on the other hand, there is no evidence. It's true, he didn't report his incidents to the police. He was fairly young at the time. He may feel differently about that, be more willing to report them now that he's older. We don't know how the police would react to this. He doesn't say, I didn't report them because I was young. He says, I didn't report them because they were going to do nothing about it. That's what he believed. On the other side of the coin, there's no evidence that the police actively ignore reports of violence against homosexuals or do nothing as a sort of universal response to attacks against homosexuals. I think the record can go either way. And on that sort of record, it doesn't meet the standard for reversal, which is to show that the record compels the conclusion that the government is unable and unwilling to control persecution. But you have a fact finding by the AIJ that the government is unable or unwilling, and the BIA disagreed with that fact finding. That is one interpretation of the decision. As I said, I don't think it's clear entirely how the board was applying the standard, and whether it said it didn't rise to a legal standard or whether it disagreed with the facts. And in any event, it wasn't the development. But, you know, we're going to be talking about this same subject 100 years from now. The cohort standard of review? What's the question of fact? What's the question of law? And it's going to go on and on and on. And so we've all got views on the subject. And anyway, where is this person now? Where is he? Physically. Physically? I believe he's in the United States. He's out of custody, and he's living in the United States. But you could check with his attorney, because she would have a better idea. Well, but you don't know. I don't. As I said, I think she would have better information than I do. As far as I know, he's in the U.S. at present. I agree that this question of what's the question of law, what's the question of fact, is always a concern to the courts. And they've grappled with it in a variety of different contexts. But that's not a reason to sort of throw up our hands and say, well, we'll just muddle on. I think that the courts and the board are moving towards having clearer definitions in the silent cases of what's a question of fact and what's a question of law. And so I think it's worth it to send it back to the board, have the board consider it. And then we say, well, the fact finder determines the facts. The IJ and the board will apply the law. And that's a mixed question of law and fact. And then we have the no full review. Almost everything's a mixed question of law and fact. Yeah. That's correct. I mean, that would be the – if the court wanted to give instructions on remand, that would be the kind of instructions to give. Or you could just cite the case law, like Rador and Rodriguez, the recent cases the board – this Court has issued. As far as the second issue that we think remand is appropriate on, and that's the he experienced past persecution on account of a protected ground. He experienced a bunch of – a variety of different incidences, including he had sexual abuse as a child, there was a rape, and then there was the beatings he experienced in the street, and the discrimination in employment. The board did not, I think, clearly categorize each incident as to whether that each incident is found to be on account of a protected ground. It did say that it didn't find the rape to be on account of a protected ground. But to some extent, the other – it didn't really address the sexual abuse, whether they found that to be on account of a protected ground. It found – it seemed to find that the other incidents, the harassment – I mean, the beatings, let's call them beatings, and the discrimination, that those were not severe enough to amount to persecution, even though they were on account of a protected ground, and that's supported by the case law. But as far as the other incidents, rape and sexual abuse, whether they were on account of a protected ground, I think we need to – we've asked for remand so the board can reconsider whether those incidents are on account of a protected ground under – expressly under the Real ID Act standard, which requires that the protected ground be one central reason – at least one central reason for the persecution. The board didn't expressly state how that applied in this case. And in particular, the board can look at it in light of this court's recent case law in Paris and Mova, in which it explained how it read that standard and explained that the applicant doesn't need to prove that it's the only reason for the incident, or only that it was at least 51 percent of the persecutor's motivation. So that's guidance to the board. The board didn't have the benefit of that guidance when it issued the decision. In this case, I think it would benefit the board to have that guidance and it can issue, as I said, a better decision. Well, you know, we didn't have a lot of benefits when the Justice Department blessed us with 8,000 immigration cases at one time. What we used to do about maybe 800 a year, then in one fell swoop, we got 8,000. Yeah, I agree. We've been cleaning up their work for a long time. Well, in this case, as I said, we want to be able to issue a better decision on our own. That's why we asked for remand. You know what? You'll get lots of chances to get better decisions because there are lots of cases coming through. Yes, and remand is a common result where the court decides that the board didn't do something. When did he prevail before the IJ and got the withholding of removal granted? It was in 2007. Yes. Correct? Yes. So it's been more than five years now since he obtained that favorable decision from the IJ. That's correct. Unfortunately, he was in custody for a bit, but since then he's been out of custody and living in the United States, as far as I know. How long was he in custody? I don't know. I can get back to you on that, or you can ask the attorney. I'm not aware specifically. But he does have a criminal record. That was the reason for him being in custody. He has three drug convictions, and he has some other arrests. It's not clear from the record, but apparently they led to some convictions as well. They're all fairly minor offenses, but nevertheless that has led to his involvement. Yes, unfortunately. So anyway, he's been living in the United States, as far as I know, with no difficulties at present. So as I said, we've requested remand for the board to reconsider both the prosecution determination in light of current and recent developments in the case law that have clarified the board's or have developed and elaborated on the board's standards of review and how to determine when something is on account of persecution. There are no further questions. Take all that two bites at the apple. Yes. As I've made clear by citing both there's a California communities case I and also the other cases, including the Bren case from the Seventh Circuit. If the agency requests remand, generally the court should grant remand for the agency to redo the decision. So thank you. Thank you, Your Honors. Thank you. I just want to briefly respond to a couple of points. I've said earlier that it seems like the BIA wants to develop the law in a new decision in this case, not for the purposes of this case. We haven't heard anything about how this new decision would actually change the result in this case or allow the board to clarify its decision for the purposes of this case. It's in order to come up with a published decision to develop the law in general for use in another case, and that doesn't make any sense and that really is unfair to the petitioner who, as we noted, won his case. The California Coastal Commission case that the agency cited in the Supplemental Authorities Letter held that it was appropriate to remand to the agency when it asked for remand when it had recognized the merits of the petitioner's challenges and has been forthcoming in these proceedings. That hasn't happened here. So, again, it just seems like the remand request, which is the third time to this Court, is just to sort it out for future proceedings. With respect to the governmental control issue, there's really never been any suggestion that that is anything other than a factual finding to be reviewed for clear error. That's what the BIA itself said it was doing. None of the cases suggest that it's anything other, including the recent case law that the Attorney General is referring to. The cases that they had relied on for that point in their remand motion have been rejected, as I noted. So that's – that doesn't really seem like there's any basis to feel that the law has developed in that particular area. With respect to the other aspects, the law is clear that it's a two-part inquiry, but the first part of it is reviewing the IJ's factual findings for clear error. And with respect to everything here, the BIA did not do that. So it wouldn't come out any better or with a clearer decision if it were allowed to do so again. So does the Court have any further questions? Thank you very much.
judges: Pregerson, Fletcher, Nguyen